

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　Plaintiff-Respondent,　　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)　　　No. SD38351
　　　　　　　　　　　　　　　　　　)
STEVEN LEWIS BROWN, JR.,　　　　　　)　　　**Filed:　May 23, 2025**
　　　　　　　　　　　　　　　　　　)
　　　Defendant-Appellant.　　　　　　)

APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

The Honorable Michael J. Randazzo, Judge

**<u>AFFIRMED</u>**

Following a jury trial, Steven Lewis Brown, Jr. ("Brown") appeals the judgment of the

Circuit Court of Crawford County, Missouri ("trial court"), convicting him of 11 counts of child

molestation in the first degree, four counts of statutory sodomy with a person less than 12 years

of age, and four counts of statutory sodomy with a person less than 14 years of age.[1]  *See*

sections 566.067, 566.062, and 558.011.[2]  The jury recommended the trial court sentence Brown

---

[1] Three of the child molestation counts were class B felonies and the remaining eight counts were class A
felonies.  All of the sodomy counts were unclassified felonies.

[2] All references to statutes are to RSMo 2016, including changes effective January 1, 2017, unless
otherwise specified.  The three counts of child molestation where Brown was charged and convicted of
class B felonies (Counts I, II, and III) were related to offenses which occurred in 2014 and 2015, prior to

to five years' imprisonment on each of the class B felony child molestation convictions; 10 years' imprisonment on each of the class A felony child molestation convictions; five years' imprisonment on each of the statutory sodomy with a person less than 14 years of age convictions; and 10 years' imprisonment on each of the statutory sodomy with a person less than 12 years of age convictions. The trial court accepted the jury's recommended sentences on each conviction and ordered the sentences on the convictions for statutory sodomy to be served consecutively to each other and concurrent with each conviction for child molestation, for a total term of 60 years' imprisonment. In two points on appeal, Brown claims the trial court abused its discretion in excluding evidence of a "prior false allegation of sexual intercourse" by his daughter ("Victim") against Brown (Point I) and that the trial court plainly erred in failing to *sua sponte* exclude testimony by Victim's treating therapist (Point II). We affirm the trial court's judgment.

## Factual Background and Procedural History

Brown is Victim's biological father. During the time the alleged abuse occurred, Victim lived with Brown, Victim's biological mother ("Mother"), and Victim's younger brother ("Brother"). Brown has a medical disability, spinal cerebella ataxia, that prohibits him from working, so Brown was home with the children after school and when they were home from school during the Covid-19 pandemic.

When Victim was eight or nine years old, Brown began touching Victim over her clothing in her "chest area" and "butt." Brown's touching progressed to touching Victim's chest, butt, and "vaginal area" under her clothes when Victim was approximately 10 years old. The

the statute change; therefore, for those three felonies only, the references to sections 566.067 and 558.011 are to RSMo Cum.Supp. 2010.

2

touching often started when Brown asked Victim to give him a back massage which would "turn into something more and he would start touching" Victim. When this first started, Victim did not "understand [what was happening] a lot" and thought this touching was "normal."

Eventually, Brown had Victim touch his penis while moving her hand up and down. The touching would stop when a "liquid substance" came out on her hands or body. This touching initially occurred once or twice a week but progressed to almost every day. Victim stated that Brown would touch her chest or vagina or sometimes put his fingers in her vagina while she touched his penis.

Victim stated that other times Brown "used his hand on himself" while Victim was naked. Victim also put her mouth on Brown's penis until there was a "weird taste." Brown put his mouth on Victim's vagina when he was touching her vagina with his hand or "before he was going to put his penis inside [her] vagina." One time, Victim asked Brown to stop touching her and Brown threatened to kill himself. The touching continued until October 13, 2020, when Victim was approximately 14 years old.

On October 13, 2020, Victim got in trouble for using Snapchat, a social media application, on Victim's phone. Mother took Victim's phone away. Shortly after taking her phone away, Mother found Victim in her room crying. Victim then told Mother that Brown had been sexually abusing her. Victim told Mother she was also upset because Victim had told Brown no "after he asked for sex and he was angry and taking it out on everybody."

Immediately after Victim's disclosure, Mother took Victim and Brother from the house and drove to a nearby lake so Mother could figure out what to do. Mother then drove to the middle school track. While they were at the track, Mother called Brown and told him Victim had disclosed the sexual abuse to her, that she was going to report it to the police, and that she

3

and children were not coming home.  Brown threatened to kill himself.  Brown told Mother to tell Victim he loved her and would "see her in heaven but he was going to kill himself so he was going to go to hell[.]"  Mother drove to the police department and reported what Victim had told her about Brown.

Victim underwent a forensic interview and a sexual assault forensic examination ("SAFE") at Kid's Harbor, a child advocacy center.  Victim's examination was "normal[,]" meaning no physical findings of trauma or injury.[3]  Following the exam, Victim was referred to therapy.  Victim worked with Rebecca Padgett ("Padgett"), counseling program manager and therapist at Kid's Harbor, using trauma-informed therapy for approximately three years following Victim's disclosure.

The State initially charged Brown with 11 counts of child molestation in the first degree, four counts of statutory sodomy with a person less than 12 years old, four counts of statutory sodomy with a person less than 14 years old, and one count of statutory rape in the first degree for his alleged sexual abuse of Victim and one count of child molestation in the first degree for alleged conduct against Brother.  The State tried its case against Brown three separate times. The initial trial was held in December of 2022, which resulted in not-guilty verdicts on the count of statutory rape in the first degree and the count of child molestation related to Brown's alleged conduct against Brother.  The jury was deadlocked as to the remaining counts.  The trial court accepted the jury's verdicts and discharged Brown with regard to those two counts, then declared a mistrial on the remaining counts where the jury failed to reach verdicts.  A second trial was

---

[3] The examiner testified at trial that in her experience and according to literature, in most situations of sexual assault, the exam is normal.  She further testified that the point of the examination is for the child to be checked and reassured that their body is normal.

4

held in May of 2023, which resulted in the jury being deadlocked on all counts. The trial court declared another mistrial. A third trial, the trial underlying this appeal, was held in October of 2023. The jury returned guilty verdicts on all charges and recommended sentences to the trial court. The trial court entered its Judgment convicting Brown on all charges and sentenced him to terms of imprisonment. Brown filed this timely appeal. Additional facts relevant to each point on appeal are included in the analysis portion of this opinion.

**Analysis**

Point I

In Point I, Brown contends the trial court abused its discretion in excluding evidence of what he characterizes as Victim's "prior false allegation of sexual intercourse" against Brown because that evidence was "relevant to [Victim's] credibility" and would have been used to impeach Victim's credibility. He argues that by excluding this evidence, the trial court denied his right to a fair trial, to present a complete defense, and denied him due process. At trial, however, Brown did not seek to admit into evidence a "prior false allegation of sexual intercourse" by Victim. What he sought to admit into evidence was the prior jury verdict finding Brown not guilty of statutory rape in the first degree against Victim that was tried in a previous trial to a jury in December of 2022.[4] He argues that because evidence concerning a witness's credibility, the interest and bias of a witness, and the witness's feelings toward or relation to a party are always relevant, and because he equates a "not[-]guilty" verdict to a false allegation, the prior "not[-]guilty" verdict should have been admitted into evidence for the jury to consider.

---

[4] Brown fails to cite to any authority to support his argument that a not-guilty verdict amounts to evidence that Victim made a "prior false allegation" or that a not-guilty verdict somehow comments on Victim's credibility.

Brown further argues that had he been convicted of the statutory rape count during the previous trial, the jury would get to consider that prior conviction at trial if he were to testify. We find Brown's arguments unavailing.

*Standard of Review*

This Court reviews the trial court's admission or exclusion of evidence for an abuse of discretion. ***State v. Minor***, 648 S.W.3d 721, 733 (Mo. banc 2022).

> When a claim of error as to the trial court's exclusion of evidence is preserved, we will reverse a decision to exclude evidence "only when there is a clear abuse of discretion." [*State v.*] *Michaud*, 600 S.W.3d [757,] 761 [(Mo. banc 2019)]. "An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Salyers*, 624 S.W.3d 456, 459 (Mo. App. S.D. 2021) (quoting *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020)). In this review, we recognize trial courts have broad discretion to admit or exclude evidence during a criminal trial. *Michaud*, 600 S.W.3d at 761.

***State v. Moore***, 682 S.W.3d 436, 445 (Mo. App. S.D. 2024).

*Additional Facts Relevant to Point I*

During the third trial, at the conclusion of Victim's testimony, defense counsel made an offer of proof related to Brown's previous not-guilty verdict. Counsel questioned Victim about her allegations that Brown had sexual intercourse with her, but that a jury found him not guilty of that offense at the conclusion of the December 2022 trial as follows:

> [Defense counsel]: [Victim], part of the testimony that we went through today was your previous accusations of sexual intercourse that you had with [Brown], correct?
>
> [Victim]: Yes.
>
> [Defense counsel]: And that count was actually, there was at least one count that was previously charged in this case, is that correct?
>
> [Victim]: Yes.

6

[Defense counsel]: And that count was actually presented to a jury back in December of '22, is that correct?

[Victim]: Yes.

[Defense counsel]: And the jury in that case returned a verdict of not guilty, correct?

[Victim]: Yes.

[Defense counsel]: Okay. I don't have any further questions.

The Court: Does that conclude your offer of proof?

[Defense counsel]: It does[,] Judge.

Defense counsel then argued the testimony was relevant and requested that the testimony be admitted into evidence. The trial court stated that it was again overruling defense counsel's request and reaffirmed its prior ruling excluding the testimony.[5]

---

[5] The trial court first decided this issue in Brown's second trial in May of 2023. Prior to the start of the second trial, the trial court instructed the State and the defense to inform their witnesses not to discuss the fact that the case had been tried previously. Defense counsel agreed that references to a "previous hung jury" could result in a mistrial because it would invade the province of the jury. Defense counsel argued, however, that the jury should hear that Brown was found not guilty on the count for statutory rape in the first degree because it was "part of the totality of the allegations that speak somewhat to credibility[.]" The State argued the not-guilty verdict did not determine Brown was innocent, only that the State failed to meet its burden of proof and, therefore, the not-guilty verdict was not relevant to Victim's credibility. Defense counsel countered that had Brown been previously found guilty of child molestation the verdict and conviction would be admissible at a subsequent trial, and for that reason, a verdict of not guilty should likewise be admissible. The trial court ruled it would not "allow this jury to find out about any previous trial because I think that invades the province of this jury in making credibility determinations in this trial and this trial alone." The trial court ruled at that time that the parties could cross-examine witnesses regarding prior statements, but they were not permitted to discuss the fact that there was a previous trial.

*Discussion*

Extrinsic evidence of a prior false allegation may be admissible to refute the credibility of a witness if the witness knowingly made a prior false allegation and the prior false allegation is legally relevant. **State v. Long**, 140 S.W.3d 27, 31-32 (Mo. banc 2004). The prior allegation must be proven false or there is no error in excluding the evidence. **State v. Davison**, 636 S.W.3d 588, 595 (Mo. App. W.D. 2021).

> "[A] prior report of sexual abuse that [is not shown to be] false does not 'speak to,' does not 'b[ear] on,' and is not 'relevant' to the 'ultimate issue of a witness's credibility.'" [*State v. Abbott*, 412 S.W.3d 923, 929-30 (Mo. App. S.D. 2013)] (quoting [*Mitchell*, 313 S.W.3d at 677-79]). And if the proponent of the evidence fails to show the falsity of the prior allegation, then he is "not entitled either to cross[-]examine [the witness] about her prior report of sexual abuse or to introduce extrinsic evidence of that report for the purpose of impeaching [the witness's] credibility" because, without evidence of falsity, "the report [i]s neither logically nor legally relevant to discrediting [the witness's] credibility. *Id.* at 930.

*Id.* at 596.

Brown correctly argues that there was a lack of evidence corroborating Victim's testimony and credibility was a key factor in this case. However, Brown fails to demonstrate that Victim's prior allegation of statutory rape is, in fact, false. A verdict of not guilty, an acquittal, on a criminal charge does not prove that the defendant is innocent, nor is it a "finding of any fact." **State v. Clark**, 197 S.W.3d 598, 601 (Mo. banc 2006) (citing **United State v. Watts**, 519 U.S. 148, 155 (1997)). An acquittal is an acknowledgment that the State failed to prove the elements of the charged offense beyond a reasonable doubt; "[w]ithout specific jury findings, no one can logically or realistically draw any factual finding inferences." *Id.* A jury found Brown not guilty of the statutory rape charge. The jury did not find that Brown was innocent or that Victim made a false allegation. Brown's offer of proof did not establish Victim made a prior false allegation that could be used to attack her credibility at trial. Therefore, the trial court did

not abuse its discretion when it excluded evidence of the jury verdict finding Brown not guilty of statutory rape in the first degree. Point I is denied.

## Point II

In Point II, Brown claims the trial court committed plain error in failing to *sua sponte* exclude testimony from Victim's treating therapist, Padgett, that "indicated [Padgett] believed [Victim]." The specific testimony Brown contends should have been excluded was Padgett's testimony:

> As we moved to the other side of trauma and she began to start kind of gaining her confidence and kind of leaving some of these past experiences behind, she was more articulate, she was more confident, she was happier, because she was no longer carrying the burdens of being sexually abused regularly and so you could kind of see how she moved to how her mood shifted and changed.

Brown claims this testimony was particularized expert testimony[6] regarding Victim's credibility which is prohibited.

### Standard of Review

This Court may, in its discretion, review unpreserved claims of error under the plain error standard of review. ***State v. Brandolese***, 601 S.W.3d 519, 525-26 (Mo. banc 2020).

---

[6] ***State v. Ferguson***, 568 S.W.3d 533, 543 (Mo. App. E.D. 2019), discusses the distinction between general and particularized expert testimony:

> Generally, two types of expert testimony are challenged in cases involving the sexual abuse of a child: general and particularized. *State v. Churchill*, 98 S.W.3d 536, 539 (Mo. banc 2003). "General testimony describes a 'generalization' of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse," while "[p]articularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused." *Id.* While the trial court has broad discretion in admitting general testimony, "particularized testimony must be rejected because it usurps the fact-finding role of the jury and thus is inadmissible." *Rogers*, 529 S.W.3d at 911. This is because "[e]xpert testimony that comments directly on a particular witness's credibility or that expresses an opinion with respect to the credibility or truthfulness of witnesses of the same type under consideration invests scientific cachet on the central issue of credibility and should not be admitted." *Id.* (quoting *State v. Williams*, 858 S.W.2d 796, 800 (Mo. App. E.D. 1993) ) (internal quotations omitted).

9

> Plain errors affecting substantial rights may be considered by the appellate court where the court finds that "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is discretionary, and this Court will not review a claim for plain error unless the error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" [*Brandolese*, 601 S.W.3d at 526] (quoting *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017)). An appellate court should decline to review for plain error where there is no showing of manifest injustice or a miscarriage of justice. *State v. Jones*, 427 S.W.3d 191, 195-96 (Mo. banc 2014). The defendant must show "not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice." *State v. Stuckley*, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) (citing *State v. Mueller*, 568 S.W.3d 62, 75 (Mo. App. S.D. 2019)).

***State v. Lechner***, No. SD 38099, 2025 WL 585794, at *17 (Mo. App. S.D. Feb. 24, 2025).[7]

*Additional Facts Relevant to Point II*

While the entirety of Point II treats Padgett's testimony as "particularized" expert testimony that arguably comments on the veracity of Victim's statements and vouches for Victim's credibility, Brown completely ignores the fact that Padgett did not testify as an expert witness at trial. In fact, the record reflects that shortly after Padgett began testifying at trial, defense counsel asked to approach the bench. The following conversation occurred:

> [Defense counsel]: Well first I'd ask if you are trying to qualify her as some sort of an expert because I'm going to object to that given she's not been endorsed as an expert, this has come up the last two trials. Her scope was just to talk about the counseling.
>
> [The State]: I'm just asking her about her educational background.
>
> [Defense counsel]: So you're not trying to elicit any testimony then?
>
> [The State]: Not intentionally I'm trying to explain what counseling is.
>
> [Defense counsel]: Okay I just want to make sure you're not going to ask her for an opinion.

---

[7] We note that an application for transfer was filed April 14, 2025, and is currently pending in our Supreme Court, No. SC101052; however, the application does not take issue with the standard of review regarding plain error as stated in ***Lechner*** and quoted herein.

10

[The State]:  I will do my best not to.

The trial court then sustained the objection.  The State then clarified, "I'm just asking about her qualifications to be a [therapist] and the services she provides."  The trial court then made a finding on the record:  "I'm going to find that she's not an expert and not allow her to testify as an expert at this point."  The State continued its direct examination of Padgett without further comment or objection from the defense.

Padgett continued her testimony testifying specifically about her sessions with Victim.  She testified she used trauma-informed therapy, in particular Trauma Focused Cognitive Behavioral Therapy ("TFCBT"), in treating Victim.  Padgett testified that, because Victim was in "active disclosure," her therapy started by giving Victim "the opportunity to talk about what was happening."  Padgett testified that during therapy Victim spoke about the "events as she remembered them," and Padgett helped put those events in some sort of order.  Padgett testified Victim's presentation was consistent with child sexual abuse and that Victim experienced symptoms of post-traumatic stress disorder.  Padgett further testified regarding the behavioral changes she observed in Victim as she worked through TFCBT.  Her specific testimony, which Brown claims should have been *sua sponte* excluded by the trial court, is as follows:

> [The State:]  . . . [S]o as [Victim] worked through this with you did you observe I guess changes in her as she was working through?
>
> [Padgett:]  Yes.
>
> [The State:]  What did you see change wise?
>
> [Padgett:]  So initially when [Victim] presented her symptoms were very like she was very much telling her story, but you could see like in her physical characteristics that she was like sad and that she was struggling and there was anger and there was frustration and there was fear and she kind of just, you could just see it kind of on her. And when we would go through and we would be talking about the events that have happened there was actual physical changes in her posture. So

11

she might come into my office and she may have been talking about school and she was just sitting upright and talking loudly and totally engaged, but then as we shifted into that work, that trauma work you would see her change her posture, she would sometimes pull her knees up into her chest and she would hold them tightly. She would talk quieter. Most of the work that [Victim] did when she was describing events that happened she was sitting in a kind of old tattered beanbag on the floor that had duct tape and she was just kind of sitting in that beanbag as tightly as she possibly could and she would sometimes hold her hands real tightly while she was talking about it. And you could see like the physical response of how it bothered her when she was talking about what her experiences were. As we moved to the other side of trauma and she began to start kind of gaining her confidence and kind of leaving some of these past experiences behind, she was more articulate, she was more confident, she was happier, because she was no longer carrying the burdens of being sexually abused regularly and so you could kind of see how she moved to how her mood shifted and changed.

Brown did not object to this testimony at trial or include this issue in his motion for new trial. Brown now claims, for the first time on appeal, this testimony was "particularized" expert testimony about Victim's credibility, specifically that it evidenced Padgett's opinion that Victim "was not telling a story" and that Victim "was no longer burdened by the trauma caused by [Victim's] father."[8]

*Analysis*

Brown urges this Court to conduct a plain-error analysis of his attempted challenge against expert testimony in this case and, in doing so, ignore the fact that the trial court made a finding that Padgett was not testifying as an expert witness. Because Padgett testified as a fact witness, Victim's treating therapist, we decline to engage in such an analysis. Padgett's testimony at trial was akin to that of a treating physician. "The treating physician is first and foremost a fact witness, as opposed to an expert witness." **Brandt v. Med. Def. Assocs.**, 856 S.W.2d 667, 673 (Mo. banc 1993), *superseded on other grounds by statute*, Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104-191, 110 Stat.1936 (HIPAA).

---

[8] Nowhere in the record does Padgett testify in this fashion or state these express opinions.

12

"[T]he treating physician only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues." *Id.* A lay witness "can testify as to what [s]he hears, feels, tastes, and smells as well as what [s]he sees." *State v. Shaffer*, 439 S.W.3d 796, 801 (Mo. App. W.D. 2014) (quoting *Stone v. Missouri Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 21 (Mo. banc 2011)). Further, "a witness who personally observed events may testify to h[er] matter of fact comprehension of what [s]he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." *State v. Sander*, 682 S.W.3d 85, 96-97 (Mo. App. W.D. 2023) (quoting *State v. Davidson*, 242 S.W.3d 409, 414 (Mo. App. E.D. 2007)).

Padgett's testimony falls within the parameters of permissible and admissible lay witness testimony. Padgett neither expressly nor implicitly vouched for Victim's credibility or the credibility of sexual abuse victims in general, nor did Padgett state that Victim suffered sexual abuse at the hands of Brown. Instead, Padgett testified regarding Victim's therapy journey following her disclosure of sexual abuse, specifically as to what she saw and heard. Padgett's testimony covered 27 pages of the transcript and included a description of her observation of Victim's behavior, emotions, and demeanor during her therapy sessions. Padgett testified she "could see like in [Victim's] physical characteristics that she was like sad and that she was struggling and there was anger and there was frustration and there was fear and she kind of just, you could just see it kind of on her." She testified that Victim's posture changed when she was talking about events that happened, "she would sometimes pull her knees up into her chest and would hold them tightly[, s]he would talk quieter[,]" and "she was just kind of sitting in that beanbag as tightly as she possibly could and she would sometimes hold her hands real tightly

13

while she was talking about it." She further testified that as they moved to the other side of trauma, Victim "began to start kind of gaining her confidence and kind of leaving some of these past experiences behind, she was more articulate, she was more confident, she was happier" and "you could kind of see how [Victim] moved to how her mood shifted and changed."

Padgett did not testify or give an opinion about the truthfulness of Victim's allegations or whether she found Victim credible. Instead, Padgett's testimony, which Brown now contends was improper, consists of one paragraph of her observations of Victim during therapy sessions which was not repeated or excessive. Padgett described Victim's physical demeanor and changes she personally observed throughout her treatment of Victim. This Court fails to imagine a situation wherein the testimony of the treating therapist of a sexual abuse victim does not in some shape or form comment on what the therapist saw and heard throughout therapy sessions, including a victim's changed mood and behavior throughout therapy as they relate the abuse they allege occurred. Further, the jury was aware that Victim disclosed Brown sexually abused her and that was why she was in therapy, and so it came as no surprise that Victim and Padgett discussed the sexual abuse during therapy sessions. The State never asked Padgett for an opinion on the veracity of Victim's allegations against Brown, nor did Padgett express such an opinion. *See* **State v. Johnston**, 957 S.W.2d 734, 749 (Mo. banc 1997) ("Unsolicited statements that are brief and limited in substance do not amount to reversible error in the absence of evidence that the prosecutor intentionally tried to inject unfair prejudice into the trial.").

Further, defense counsel either did not believe that Padgett's testimony Brown now complains of violated the trial court's ruling, or made a conscious and deliberate choice not to object to Padgett's testimony, thereby waiving plain error review. **State v. D.W.N.**, 290 S.W.3d 814, 825 (Mo. App. W.D. 2009) (holding "[a] trial court does not plainly err when it fails to *sua*

14

*sponte* prohibit the introduction of objectionable evidence when the totality of the surrounding circumstances reflect a clear indication that trial counsel strategically chose not to object to the evidence."). The fact that defense counsel objected to Padgett testifying as an expert yet failed to object to her testimony evidences defense counsel's failure to object was trial strategy. The trial court sustained defense counsel's objection to Padgett testifying as an expert in this case right before the challenged testimony was received. We must conclude that if defense counsel believed Padgett gave improper particularized expert testimony that vouched for Victim's credibility after his objection to her testifying as an expert was sustained, counsel would have objected to this testimony during trial. Under the totality of the circumstances of this case, the trial court did not err, plainly or otherwise, when it declined to interject itself *sua sponte* and exclude Padgett's testimony. Consequently, we conclude that Brown's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice or a miscarriage of justice. **Brandolese**, 601 S.W.3d at 526. We decline to engage in plain error review. Point II is denied.

The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

15